# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One Black Apple iPhone and One Grey Nokia Flip Phone located at 1801 Stanley Road, Room 300, Greensboro, North Carolina | ) ) ) ) ) ) Case No. 1:23mj182 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Middle    District of    North Carolina   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | To knowingly or intentionally distribute or possess with the intent to distribute a controlled substance |
| 21 U.S.C. § 846 | Conspiracy to distribute a controlled substance |

The application is based on these facts:
See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Benjamin L. Crocker
*Applicant's signature*

Benjamin L. Crocker, Special Agent, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 4/26/2023

*Judge's signature*

City and state: Winston Salem, North Carolina    Joi Elizabeth Peake, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE BLACK APPLE IPHONE AND ONE GREY NOKIA FLIP PHONE POSSESSED BY TEDDRICK LAMONT HILL | Case No. 1:23mj182 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Benjamin L. Crocker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Currently, I am investigating the drug distribution activities of Teddrick Lamont HILL in the Middle District of North Carolina. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of multiple electronic devices which are currently in law enforcement possession and are further described in Attachment A, and the extraction from such devices of electronically stored information as further described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since August 2019. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the

1

investigation of firearms, controlled substances, arson, and explosives offenses. I have participated in investigations involving all these areas. Prior to my career with ATF, I worked for the South Carolina Highway Patrol in South Carolina for approximately 6 years. During my tenure with the South Carolina Highway Patrol, I served as a Patrolman, Advanced Special Response Team member, and on the Criminal Interdiction Team. During my career in law enforcement, I have been involved in numerous complex case investigations involving federal or state firearms and controlled substance violations. Prior to my career in law enforcement, I attended The Citadel and graduated in 2013 with a Bachelor of Arts Degree in Criminal Justice.

3. I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of acquiring and distributing narcotics, their use of telephones, and their use of code and slang words to conduct their transactions. I am familiar with practices used by traffickers involving the collection of proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the common practice among narcotics traffickers to carry multiple phones and dispose of phones frequently to evade law enforcement detection of their illegal activities. I have conducted and assisted with numerous investigations regarding the unlawful possession, use, and distribution of narcotics during my law enforcement career. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearm and drug related crimes, including, but not limited to, electronic and visual surveillance, witness interviews, the use

of search warrants, the use of confidential informants, the use of pen registers/trap and trace devices, mobile tracking devices, and the use of undercover agents.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched shall be referred to as the "**TARGET DEVICE 1.**" **TARGET DEVICE 1** is a Black Apple iPhone. A photograph of the **TARGET DEVICE 1** has been attached to this application as Attachment A for further identification.

6. The property to be searched shall be referred to as the "**TARGET DEVICE 2.**" **TARGET DEVICE 2** is a Grey Nokia Flip Phone. A photograph of the **TARGET DEVICE 2** has been attached to this application as Attachment A for further identification.

7. **TARGET DEVICE 1 and TARGET DEVICE 2** are currently located at the ATF Greensboro Field Office in Greensboro, North Carolina.

8. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE(S)** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. During the month of November 2022, ATF TFO La Valley received information from a confidential informant (CI) both Shontain PETERSON and Teddrick

3

HILL were still actively involved in the sale of narcotics in Winston-Salem, North Carolina. On November 8, 2022, an ATF CI made phone contact and asked PETERSON if an associate could purchase cocaine from PETERSON. The CI contacted a cellular device that PETERSON utilized. PETERSON agreed to same and informed the CI to tell the third party to respond to 180 Willow Oak Drive, Apt 304, Winston-Salem. The third-party associate is another ATF CI[1].

10. On November 8, 2022, an ATF CI arranged for ATF CI2 to meet with PETERSON to purchase one (1) ounce of cocaine hydrochloride. When CI2 arrived, PETERSON invited CI2 inside 180 Willow Oak Drive, Apt 304. CI2 observed a bag of cocaine base and asked if that belonged to PETERSON. He replied that it belonged to his associate, believed to be HILL, who was not present. PETERSON was under the impression that CI2 was purchasing two (2) ounces of cocaine hydrochloride. CI2 informed PETERSON that he would purchase two (2) ounces; however, CI2 stated he wanted one (1) of the ounces as cocaine base. PETERSON stated he would cook it and proceeded to cook one (1) ounce into cocaine base while CI2 waited. After completing the cooking process, CI2 paid PETERSON $2,200 in ATF undercover funds to complete the transaction for the two (2) ounces. The transaction was audio/video recorded, the substances field tested positive, and funds utilized were prerecorded. The DEA Laboratory later confirmed one of the exhibits purchased was cocaine base with an official weight of

---

[1] The CI has a known criminal history and is a paid confidential informant.

27.45 grams and one of the exhibits purchased was cocaine hydrochloride with an official weight of 27.59 grams.

11. On November 15, 2022, ATF CI2 met with PETERSON at his apartment to discuss a previously arranged purchase of cocaine base involving an ATF Undercover Agent (UC). CI2 arrived and went inside 180 Willow Oak Drive, Apt 304. CI2 observed a large amount of what appeared to be cocaine hydrochloride, cocaine base, and marihuana inside the apartment. PETERSON and HILL were both inside the residence. CI2 acquired four and a half (4½) ounces of cocaine base from PETERSON. In addition, HILL provided PETERSON with two baggies of cocaine base cocaine totaling two and a half (2½) ounces. PETERSON then provided the cocaine base received from HILL to CI2 as a "front." CI2 then provided PETERSON with the ATF undercover funds and took the cocaine base to an ATF UC in a nearby parking lot (the ATF UC had arrived and parked in the parking lot of the residence). After transferring the cocaine base to the ATF UC, CI2 received $5,400 in ATF undercover funds from the ATF UC, which CI2 then paid to PETERSON. PETERSON returned $500 as a broker fee to CI2. The cocaine base weighed approximately 200.75 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded. The DEA Laboratory later confirmed the exhibit purchased was cocaine base with an official weight of 195 grams.

12. On November 16, 2022, CI2 was directed by PETERSON to travel to 180 Willow Oak Drive, Apt 304, to meet with HILL and receive a sample of fentanyl. ATF CI2 called PETERSON to set up the deal on PETERSON's cellular device. When CI2

arrived, HILL provided CI2 approximately two (2) grams of fentanyl. The transaction was audio/video recorded. The DEA Laboratory later confirmed the exhibit purchased was fentanyl with an official weight of .924 grams.

13. On November 17, 2022, an ATF UC met with PETERSON and paid him $2,750 for the two and a half (2½) ounces of cocaine base that PETERSON and HILL fronted to CI2 on November 15, 2022. CI2 set up the meet between PETERSON and an ATF UC earlier that day via a recorded call with a cellular device PETERSON utilized. During their call, PETERSON instructed CI2 to tell the ATF UC to meet him at his apartment where CI2 picked up the crack cocaine on November 15 and a sample of fentanyl on November 16 (180 Willow Oak Road in Winston-Salem). The transaction was audio/video recorded and funds utilized were prerecorded.

14. On December 14, 2022, ATF Special Agents and Task Force Officers arrested PETERSON in Winston-Salem and served a subsequent search warrant at 180 Willow Oak Drive, Apt 304. PETERSON was booked into the Forsyth County Jail where he made multiple phone calls that the Forsyth County Jail recorded. ATF SA Hunt and ATF TFO La Valley reviewed several of these phone calls. At 16:43:58, PETERSON placed a call to 743-900-2696 (previously identified as the phone number HILL utilized). SA Hunt ran that number through several law enforcement databases and found it to be associated with an Allison Martin, 2640 Horizon Lane, Winston-Salem. The phone call was answered by a woman, however, after the automated jail call notification, HILL spoke to PETERSON. After the recording, PETERSON said "G." HILL answered, very

6

excited, and told PETERSON "I was at the apartment, they ran in the apartment!" PETERSON asked HILL, "did they get something out of there?" HILL then answered, "Hell yeah! Everything!" and then "not much man, nah it's just like, damn man it was a zip (referring to an ounce). Fuck man. It was about three, man. I had, I had one zip of… man it was about three of them bro." PETERSON told HILL that the police took his phones. HILL then said "I been calling the hell out of you man! Fuck!" HILL continued "Come on man! Come on bro! Goddamn man, Christeen said that shit said man to stand back from eighteen that had you on the one to ten." PETERSON asked if "Chris and them are straight?", to which HILL stated "No they downtown! They taken Xay down bro! I just left! Man, I seen it happenin'! I was in the car nigga! I was backing out, I was backing out." PETERSON advised HILL, in sum, to be careful the next few days but that he needed to get his "lady" some money, which HILL then stated that he didn't know how he'd be able to move around. HILL told PETERSON "I got a few large" (referring to a few thousand dollars) and PETERSON told HILL "I gotta five pack" (SA Hunt had given him $5,000 the day prior), "you just gotta holler at my baby." After some conversation about how he was arrested, PETERSON told HILL "I've got a nice piece of something at the crib bro." HILL said, in sum, that he couldn't move, but "I'll figure it out." HILL asked, in sum, if the only person on the warrant was PETERSON, to which PETERSON replied that he didn't know. HILL again described about how he almost got pinned in by the SWAT truck. HILL stated, in sum, that he didn't know where they were going so, he just kept driving and tried to call "Xay." HILL complained about not being able to get ahold of

7

PETERSON and called out to his girl "Bae! What's this number?" and to PETERSON "you're gonna have to remember it" and back to his girl "what's this number right here?" HILL then gave PETERSON the number 336-745-8647. SA Hunt conducted a check on that number but could not find a connection in law enforcement databases to any individual. HILL then agreed to not get rid of his current phone until PETERSON called him back.

15. PETERSON called HILL back at approximately 7:53 PM, a female then answered again and then HILL started speaking. During this call, HILL told PETERSON, that an individual called "Little Warren" had called him from the jail. Little Warren told him, in sum, that he overheard officers saying "T-Man" and that they had been watching him and PETERSON for months. According to HILL, Little Warren originally thought that HILL had been arrested but then saw PETERSON inside. HILL told PETERSON that Little Warren had heard, in sum, that PETERSON had been arrested because of something that he did the day before but that he didn't know what. PETERSON and HILL discussed who they had done business with and who potentially had cooperated with the police. At the 9:56 PM mark in the call, Xavier HARDIN (arrested during the search warrant of 180 Willow Oak Drive, Apt. 304) got onto the phone inside the jail. HILL questioned HARDIN regarding how he was questioned during the search warrant and what the officers asked about him (HILL). HARDIN explained, in sum, that he was arrested for marijuana and that the officers showed him pictures of both PETERSON and HILL and asked him what he knew about them. HARDIN told HILL that he had heard one of the older officers mention that they had obtained the warrant because of a smaller crack buy,

8

saying "it didn't really have significance." At that time the allotted call time expired and HILL told them to call him back.

16. PETERSON called HILL again at 8:18 PM. This call was again answered by a female and then HILL. PETERSON informed HILL that the police had pulled HARDIN in for an interview and that he thought they must have heard him talking on the phone about something incriminating. The conversation after that was subdued and short, the two agreeing to talk another day.

17. On March 29, 2023, HILL was arrested by Winston Salem Police Department for an outstanding Federal arrest warrant issued in the Middle District of North Carolina. **TARGET DEVICE(s) 1 and 2** were located on HILL during his arrest.

## TECHNICAL TERMS

18. Based on my training and experience, I use the following technical term to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of

capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE(s)** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE(s)** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

10

portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

11

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE(s)** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE(s)** to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

_____

## CONCLUSION

Based on the aforementioned information, there is probable cause to believe that the named items and information more fully described in Attachment B, constituting evidence or fruits of violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 will be found in the **TARGET DEVICE(s),** more fully described in Attachment A.

/S/ BENJAMIN L. CROCKER
Benjamin L. Crocker, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Dated: April 26, 2023

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

Honorable Joi Elizabeth Peake
United States Magistrate Judge
Middle District of North Carolina

13

# ATTACHMENT A

*Property to be searched*

The property to be searched is as follows:

    a. **TARGET DEVICE 1**: a black Apple iPhone.



**TARGET DEVICE 1** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 1** for the purpose of identifying the electronically stored information described in Attachment B.

b. **TARGET DEVICE 2**: a Grey Nokia Flip Phone.



**TARGET DEVICE 2** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 2** for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

*Items to be seized*

1. All records on the **TARGET DEVICE(s)** described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same) and involve HILL:

   a. Electronic communications between HILL and co-conspirators both known and unknown;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions; and

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

2. Evidence of user attribution showing who used or owned the **TARGET DEVICE(s)** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.